| 86 | 191 |
| 217 | ³368 |

## Barclay *et al. versus* Wainwright *et al.*

1. The land of a lessor is bound by a mechanic's lien, for materials furnished at the instance of his lessee, if it appears that the latter holds under an improvement lease.

2. It is not necessary that a lease should contain an express covenant to build to make it an improvement lease; it is sufficient if it appears that such was the intention of the parties to its execution.

3. In a scire facias upon a mechanic's lien, the defendant filed an affidavit of defence, in which he averred that he expected to be able to prove that the materials, for which the claim was filed, were not furnished upon the credit of the land, but solely upon the transfer of other securities. *Held*, that this averment was sufficient to carry the case to a jury.

4. R. assigned a mortgage to B. as collateral security for a debt due B., for which he had a mechanic's lien. The assignment contained a stipulation that nothing therein should be construed as a waiver of the right of B. to proceed upon the mechanic's lien. *Held*, that parol evidence was admissible to show that at the time the assignment was executed it was distinctly understood that no proceedings should be had upon the mechanic's lien until the maturity of the mortgage, and that such agreement was the consideration of the assignment.

5. Hopper *v.* Childs, 7 Wright 310, and Reed *v.* Kenney, 4 W. N. C. 450, distinguished.

February 1st 1878. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and TRUNKEY, JJ.

Error to the Court of Common Pleas, No. 1, of *Philadelphia county:* Of July Term 1877, No. 113.

Scire facias sur mechanic's lien, issued September 5th 1876, by Wainwright & Bryant against William K. Barclay, owner, and Ransom Rogers, contractor, for lumber furnished in the erection of a theatre on the southwest corner of Tenth and Callowhill streets, in the city of Philadelphia. Barclay filed an affidavit of defence, which set forth in substance that he is the owner in fee of the lot of ground against which this lien was filed; that said property, with a theatre thereon, was demised by deponent to Rogers for five years, from June 1st 1875, with the privilege of purchase before June 1st 1877; that deponent is in no way interested in the business of Rogers, save as his lessor; that he never had an agreement with him in reference to the erection of a building other than contained in his lease to him; that deponent believes, and expects to be able to prove, that plaintiffs were cognisant in the beginning of the precise relations existing between deponent and Rogers; that one of them saw and read the lease in question; that plaintiffs submitted it to their counsel, who advised them that no lien could be filed against the owner of the ground, and that in consequence of said advice plaintiffs refused to furnish materials to Rogers, and that the latter then gave them a mortgage, or other valuable security, on certain real estate owned by him; and that the materials were not furnished upon the credit of said land, but solely upon the transfer of said securities to them.

[Barclay *v.* Wainwright.]

The deponent further averred that neither the said then existing building already erected, nor the new one since constructed, was erected by deponent, or by any one acting under his order or direction, or on the deponent's credit or the credit of said land, but said new building was erected by the said Rogers on his credit alone and upon his order ; that the deponent never even saw the plans of the architect until after the building had been roofed in; that the old building or theatre, which formerly stood on the lot before referred to, was taken down while deponent was absent from the city.

The lease which was attached to the affidavit, and bore date June 1st 1875, provided that Rogers should pay a rent of $8840 per annum; but as he was about to expend large sums in improvements, this rent should not begin till the 1st of June 1876, after which time weekly payments of $170 each should be made. It was provided, however, that if Rogers should not have a theatre well built, costing at least $17,500, in one year from the date of the lease, he should pay rent for the first year ; but if such a building should be completed at any time before the termination of the lease, this first year's rent should be refunded. It was also provided that Rogers should pay in addition to the rent all license fees, and other charges, gas and water bills, Barclay paying the taxes, unless they were increased, in which case Rogers should pay the excess, being entitled to a credit if they were diminished; that Barclay should not be called on for repairs, &c., or to insure; but that Rogers should insure for at least $15,000, and assign the policies to Barclay as security that Rogers would perform his covenants, Barclay, however, being bound in case of a fire to apply the money recovered on the policies to rebuilding. All structures or erections were to become the property of Barclay at the termination of the lease, and he was to have the right to buy all the personal property appurtenant to the theatre, at a value to be settled by reference if the parties could not agree. Rogers was not to use the premises for any unlawful purpose. He was allowed to assign or underlet. He had an option to buy on terms fixed at any time during the lease, Barclay, however, having the privilege, if Rogers did not buy for two years, upon giving Rogers sixty days' notice, to sell said premises to anybody who would buy.

Rogers also filed an affidavit of defence, wherein he averred that in May 1876, deponent agreed with plaintiffs to procure a mortgage of certain property to secure the payment of a certain sum then agreed upon, and to assign the same to the plaintiffs in full payment and satisfaction of the debt due them ; that deponent accordingly procured such mortgage, and executed an assignment thereof, and that he subsequently, by previous arrangement, met the plaintiffs, or one of them, with their counsel, at the office of said counsel, and a settlement of their account was then and there

[Barclay *v.* Wainwright.]

effected, and the said assignment duly delivered; that at that interview a written agreement, previously prepared by plaintiffs' counsel, respecting plaintiffs' claim and said mortgage, was placed before deponent, with the request that he would execute the same, which deponent did, but without carefully reading it, or procuring a copy thereof; that deponent is advised that the reservation in said agreement of the right to proceed upon a mechanic's claim upon non-payment of said mortgage at its maturity, in law, implies an agreement not to enforce such claim until the maturity of such mortgage, viz., until May 1877; and even if the court be of a contrary opinion, deponent says that it was then and there distinctly understood and agreed between plaintiffs and deponent that no proceeding would be had upon said mechanic's claim until the maturity of said mortgage, which agreement was the consideration of said assignment, and upon the faith of said agreement deponent signed said paper.

The agreement, which was made a part of the affidavit, contained recitals to the effect that Wainwright & Bryant had supplied certain lumber to Rogers, and received his notes for various amounts, aggregating $6160.93; that said notes were due and unpaid; that the former agreed to deliver up the notes, and in consideration therefor Rogers agreed to assign a mortgage as collateral security therefor. It then contained this clause: " Provided, however, And it is hereby expressly understood and agreed, by and between the said parties hereto, that the assignment of the said mortgage, which is to be made to Chandler P. Wainwright individually, is not to be taken as a payment or satisfaction of the said claim of Wainwright & Bryant, for lumber, as aforesaid, unless the said mortgage, when due, shall be promptly paid with interest to the said Wainwright & Bryant, and nothing herein, or in connection with the taking of the said assignment of mortgage, shall be construed to be a waiver of the right of the said Wainwright & Bryant to proceed against the said theatre, and the lot upon which the same is erected, on the southwest corner of Tenth and Callowhill streets, under the act ' securing to mechanics and others payment for their labor and materials,' and its supplements, known as the mechanics' lien law, but that the said Wainwright & Bryant shall be free to so proceed forthwith."

The court made absolute a rule for judgment for want of sufficient affidavits of defence, and the defendants took this writ, assigning this action for error.

*W. W. Wiltbank* and *E. Spencer Miller*, for plaintiffs in error.— Since the Act of 1836, in Pennsylvania a leasehold interest is not the subject of a mechanic's lien: Church *v.* Griffith, 9 Barr 117; White's Appeal, 10 Id. 252; Haworth *v.* Wallace, 2 Harris 118; Schenley's Appeal, 20 P. F. Smith 98.   In all these cases it was held that no claim could be filed because of the provisions of the

5 Norris—13

[Barclay *v.* Wainwright.]

Act of 1836, and we contend that the case at bar is analogous to these in every important respect. It is true no rent was here to be charged for the first year, but it will not be urged that this would make the difference between a lease and a building agreement. It was a mere encouragement to take the lease. It is true, also, that the building, if erected, was to be left at the end of the term, but it must be remembered that the original structure was to be pulled down. There was no covenant to build. It is left to the option of the lessee. If he builds, it is for his own benefit, and not for the advantage of the owner. The true distinction is that where the lease contains a covenant on the part of the lessee to build, and is therefore a mere building agreement in disguise, the lessor is owner of the lessee contracts within the meaning of the lien laws: Woodward *v.* Leiby, 12 Casey 437; Leiby *v.* Wilson, 4 Wright 63; Fisher *v.* Rush, 21 P. F. Smith 44. In Reid *et al. v.* Kenney, 4 W. N. C. 450, the court distinctly held that to amount to a building agreement the lease must compel the lessee to build. The court below disregarded the averment of Rogers that the lien was not to be sued out until the mortgage was due, on the ground that this verbal agreement contradicted the written one. It plainly did not, and the evidence of it was clearly admissible: Selden *v.* Williams, 9 Watts 9; Powelton Co. *v.* McShain, 25 P. F. Smith 238; Shughart *v.* Moore, 28 Id. 469; Graver *v.* Scott, 30 Id. 88; Caley *v.* The Phila. & Chester County Railroad Co., Id. 364; Lippincott *v.* Whitman, 2 Norris 244.

*James W. Latta* and *S. E. Megarge,* for defendants in error.—This paper may be styled a lease, but is, in reality, the strongest kind of a building contract. Does it admit of argument that this was in fact a contract between Barclay and Rogers, by which the latter was to build a theatre, costing at least $17,500, upon the lot of the former, in consideration whereof Rogers was to have a lease of the premises for five years at a nominal rental, pay no rent for the first year, and also have the privilege of purchasing the property at a fixed price? Barclay had it in his power to compel Rogers to build, by the provision making Rogers liable for $8400 a year for the entire five years for what was an unproductive piece of property unless improved. What was the inducement to Rogers to "build a theatre upon his lessor's land?" It was this: "erect a substantial theatre upon my lot costing at least $17,500," says his lessor by the lease, "and I will contribute $8400 towards the cost by charging you no rent for the first year; further, I will give you a lease for five years, and I also permit you to purchase the property at a fixed price upon easy terms."

The case at bar is analogous to Hopper *v.* Childs, 7 Wright 310. To say that in this case "there is no covenant to build," is to raise a question of no importance to the issue. There is not a line in

[Barclay v. Wainwright.]

any one of the cases cited, as to improvement-leases, which rests the decision upon the fact, that there was, or was not, a covenant to build contained in the lease.    In several of the cases there was no such covenant.    The question is, is there a contract to build ? Wainwright & Bryant, in the agreement with Rogers, reserve in the most unequivocal manner all rights under the mechanic's lien law, and leave themselves free to proceed forthwith.    It is a strained construction that would make "forthwith" read "a year hence." Rogers, in his affidavit, does not set forth anything as taking place or anything said at the execution of the agreement, which under the cases would be a ground for equity to relieve, nor was the parol evidence clear, precise and indubitable : Martin v. Berens, 17 P. F. Smith 461 ; Penna. Railroad Co. v. Shay, 1 Norris 201 ; Greenawalt v. Kohne, 4 Id. 369.

Mr. Justice SHARSWOOD delivered the opinion of the court, February 25th 1878.

It would not be easy, and might be dangerous, to lay down any general rule by which to determine, in all cases, whether an improvement lease does or does not come within the intent and spirit of the 24th section of the Act of April 28th 1840, Pamph. L. 474, so as to subject the ground and building to the lien of a mechanic or material-man.    As was said by Chief Justice LOWRIE, in Woodward v. Leiby, 12 Casey 441, "We do not confound building contracts, payable in rents, with improvement leases ; though we do not anticipate experience by any theoretical definition of their exact differences.    Our most common improvement leases provide only for such labor as is to be done by the tenant himself and his servants, and no question of mechanic's lien can arise on them. But contracts of letting and building are infinitely various in their forms, and no definition of ours can prevent this variety, for none would be bound to conform to it ; and we must be content to ascertain, as cases arise, the special character of each contract, and the class to which it belongs."    It will not do, therefore, to hold, as we have been strongly urged to do by the learned counsel of the plaintiff in error, that the presence of an express covenant by the lease to build, is that which distinguishes a building contract from an improvement lease.    It is true there was such a covenant or agreement in Woodward v. Leiby, 12 Casey 437 ; Leiby v. Wilson, 4 Wright 63 ; and Fisher v. Rush, 21 P. F. Smith 40 ; but in Hopper v. Childs, 7 Wright 310, there was none.    The lessors there agreed to let the lessee erect, at his own expense, a shingle mill ; to allow him to use timber on the tract ; and the lessee was to pay the lessor a certain sum for every thousand shingles manufactured by him.    It is true that in the latest case, Reid v. Kenney, 4 W. N. C. 452, the absence of the covenant to build was relied on, but it was not all that was relied on, for after

[Barclay *v.* Wainwright.]

stating that the lease contained a mere license, of which the lessee might or might not avail himself, the opinion adds : " His omission to build, or his actual building, in no wise affected the amount of the rent he was to pay."

Considering the whole agreement before us, we think it falls within the category of a building contract. It is true that there is no express covenant to build ; but the amount of the rent the lessee was to pay was directly affected by his omission to build, or his actual building. If he did proceed to erect the contemplated building, he was to be released from the payment of the stipulated rent for the first year. In effect the lessor contributed this sum of $8840 towards the erection of the building. This lease is undoubtedly a very ingenious instrument ; but if we were to allow it to prevail as a mere improvement lease, the lien of mechanics and material-men might in every case be evaded.

We think, however, that there was quite enough in the affidavits of Rogers and Barclay to carry the case to the jury. The former swears very positively, that at the execution of the agreement for the collateral, May 18th 1876, "it was then and there distinctly understood and agreed between plaintiffs and deponent that no proceeding would be had upon said mechanic's claim until the maturity of said mortgage, which agreement was the consideration of said assignment, and upon the faith of said agreement deponent signed said paper." This is precisely within the case of Miller *v.* Henderson, 10 S. & R. 290 ; and the facts as sworn to by the affidavit would be evidence of fraud, where under all the cases parol evidence is admissible to vary the terms of a written contract.

We think also there was sufficient in Barclay's affidavit to prevent the entry of the judgment below. He says that he believes, and expects to be able to prove, that the labor and materials for which the claim had been filed, "were not furnished upon the credit of said land, but solely upon the transfer of other securities" to the plaintiff by the contractor, as he has narrated in the affidavit. If made out to the satisfaction of the jury, this certainly would be a good defence :· Presbyterian Church *v.* Allison, 10 Barr 413.

Judgment reversed and procedendo awarded.